IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| VS. | : CRIMINAL NO. 05-170-CG |
| YVONNE WILEY HALL | : |

### ORDER

With the consent of the parties, this action was referred for the purpose of conducting jury selection pursuant to 28 U.S.C. § 636(b)(3); *Peretz v. United States,* 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). Those oral rulings made during jury selection are memorialized herein.

### PROCEDURAL HISTORY

1. Pursuant to the schedule established by Senior Judge Charles R. Butler, Jr., the undersigned was referred three criminal cases for the purpose of conducting jury selection on August 1, 2005.

2. Pursuant to this Court's jury selection plan (1992), the Clerk of the Court provided the undersigned with a group of prospective jurors sufficient in number from which to strike three criminal juries.

3. After being given an oath, the prospective jurors responded to questions presented by the Clerk of the Court going to their legal qualifications as jurors under the Court's jury selection plan. The defendant along with Assistant United States Attorney Sean P. Costello, were present when the Clerk identified prospective jurors, administered

the oath and asked them the qualifying questions.[1]  After excusing jurors Hoydich, Keith and Fields pursuant to the Court's jury selection plan, all other prospective jurors were deemed qualified to serve.

4. The Court divided the venire into two panels, A and B, and then propounded additional questions and allowed respective counsel to ask additional questions to those members of panel B.

5. Prospective juror McCaine (#31) asked to be excused from jury service due to health problems.  After discussing her problems in the presence of all counsel, her request to be excused was granted.  McCaine was excused from all service.

6. The only motion to strike a prospective juror for cause came from the defendant and was not opposed by the Government.  The motion was granted and prospective juror Hovell (#52) was removed for cause from this action only.  The evidence did not show that she was disqualified from the other actions pending jury selection.

7. Counsel for the defendant objected to the Government's use of four of its total of eight peremptory challenges pursuant to *Batson v. Kentucky* and its progeny.  Mr. Knight, on behalf of Ms. Hall, argued that Mr. Costello had used four strikes to remove four African-American jurors in  Panel B on the basis of their race, and by this showing coupled with his opinion that these jurors had disclosed no remarkable

---

[1] Christopher Knight, Esquire, and Latisha Colvin, Esquire, appeared as substitute counsel instead of defendant's attorney, Fred Tiemann, Esquire.  They were not present during the preliminary proceedings conducted by the Deputy Clerk but were supplied with notes and information by the Clerk and other counsel who were present as to the actions taken during that process. Defendant presented no objection to proceeding with jury selection under these circumstances.

information on their questionnaires that would distinguish them from the white jurors that had not been struck, established a *prima facie* case of discriminatory striking. Thus, the evidence presented by defendant to establish a *prima facie* case of racial discrimination was the race of the defendant, African-American, his assessment that there was no apparent neutral reasons for the strikes against jurors #47, #55, #63 and #79 and the percentage of strikes used against African-Americans.  The unspoken remedy for the Government's actions was that the four prospective jurors be reinstated to the jury and that the Government be required to exercise its four strikes a second time, if it so chose.  Mr. Costello responded by arguing that defendant had failed to establish a *prima facie Batson* violation as to any of the named prospective jurors.  After hearing from Mr. Costello and Mr. Knight, it was determined that the defendant had failed to establish a *prima facie* case and for that reason, defendant's request to reinstate them to the jury was **DENIED**.

      8.      After all peremptory challenges were exercised and reviewed, the Clerk seated the first twelve jurors remaining on the strike list as the jury and the next two available jurors as alternates.  Counsel for all parties orally confirmed that the jury seated was the jury that had been struck.  The jury was given information sheets, preliminary instructions regarding their conduct and excused until August 10, 2005 for the trial of this action.

## CONCLUSIONS OF LAW

      1.      The jury panel from which a jury was struck in this action was appropriately constituted under federal law and the Court's jury selection plan.  28 U.S.C. § 1861, *et seq.*; Plan for the Random Selection of Grand and Petit Jurors (1992).  All prospective

jurors constituting the panel from which the jury was selected were legally qualified to serve as jurors under the Court's plan.

      2.      With consent of the parties, the duty to supervise jury selection in this action was referred to the undersigned as an additional duty pursuant to 28 U.S.C. § 636(b)(3). *Peretz v. United States*, 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991).

      3.      At the conclusion of *voir dire*, the parties were authorized to exercise their peremptory strikes simultaneously pursuant to Rule 24, Federal Rules of Criminal Procedure. Defendant was authorized ten peremptory strikes and the Government was authorized six peremptory challenges pursuant to Rule 24(b). Since the Court also empaneled two alternate jurors, the Government and the defendant were also allowed to exercise two peremptory challenges each in order to identify the two alternates pursuant to Rule 24(c).

      4.      After all peremptory strikes were exercised, opposing counsel were given an opportunity to review the strikes imposed. Subsequent to that review, defense counsel moved to have four African-American jurors reinstated because he believed that the motivation for their removal was their race, African-American. A hearing on this motion was immediately held outside the presence of the jury. Once Mr. Knight had completed his presentation of evidence and the Court heard oral arguments as to whether the evidence established a *prima facie* case of racial discrimination, the decision was that a *prima facie* case had not been made and the Clerk was instructed to seat the jury that had been chosen.

      5.      The procedure and legal standards followed in deciding defendant's motion made pursuant to *Batson v. Kentucky,* 476 U.S. 79 (1986) and its progeny, have

been clearly articulated by the Eleventh Circuit:

> In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court recognized that a prosecutor violates a defendant's equal protection rights when he or she uses peremptory challenges in a racially discriminatory manner in order to strike from the petit jury members of the defendant's race. Courts evaluate *Batson* objections under the following three-step procedure: (1) the objector must make a *prima facie* showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination. *United States v. Allen-Brown,* 243 F.3d 1293, 1297 (11th Cir.2001).
>
> Our cases hold that "the establishment of a *prima facie* case is an absolute precondition to further inquiry into the motivation behind the challenged strike." *Central Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.,* 236 F.3d 629, 636 (11th Cir.2000). "[T]he party objecting to a peremptory strike bears the burden of establishing facts sufficient to support an inference of racial discrimination." *Id.* However, "the trial court should consider all relevant circumstances" in determining whether a *prima facie* case of discrimination has been established. *Batson,* 476 U.S. at 96-97, 106 S.Ct. at 1723. Such circumstances include whether there is a "pattern" of strikes against jurors of a certain race, and the questions asked by the prosecutor during voir dire. *Id.* at 97, 106 S.Ct. at 1723.
> This Court has cautioned, however, that "the mere fact of striking a juror or a set of jurors of a particular race does not necessarily create an inference of racial discrimination." *Lowder Realty,* 236 F.3d at 636. Instead, "[t]he number of persons struck takes on meaning *only* when coupled with other information such as the racial composition of the venire, the race of others struck, or the voir dire answers of those who were struck compared to the answers of those who were not struck."*Id.*at 636-37. The existence of a "substantial disparity between the percentage of jurors of one race struck and the percentage of their representation on the jury" may create such an inference of discrimination, whereas "the unchallenged presence of jurors of a particular race on a jury substantially weakens the basis for a *prima facie* case of discrimination in the peremptory striking of jurors of that race." *Id.* at 6338. "Courts reviewing the resolution of a *Batson* challenge give great deference to a district court's finding as to the existence of a *prima facie* case." *Allen-Brown,* 243 F.3d at 1296 (citations and quotations omitted).

>If a *prima facie* case of discrimination is established, then the prosecution must proffer a race-neutral explanation for its strikes. The Supreme Court has stated that "[t]he second step does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem,* 514 U.S. 765, 767- 68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). In explaining the language in *Batson,* the Court noted that "[w]hat [*Batson*] means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Id.* at 769, 115 S.Ct. at 1771. *See also United States v. Cobb,* 185 F.3d 1193, 1196 n. 2 (11th Cir.1999) ("Under *Batson,* the reason for a peremptory strike that is challenged on race grounds does not have to be 'valid' in any sense other than race-neutral, nor does it have to relate to the case being tried.").
>
>After a race-neutral explanation is offered, a court must then determine whether an equal protection violation has occurred. It is during the "*third* step [of the *Batson* framework] that the persuasiveness of the justification [proffered by the prosecutor] becomes relevant--the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771.

*United States v. Novaton*, 271 F.3d 968, 1001-1003 (11th Cir. 2001)

6. In this action, all information presented by counsel was considered in deciding the validity of defendant's motion.  The Court also consulted the information contained on relevant juror questionnaires, the information provided during *voir dire* and the Court's observations during the selection process.  After carefully considering all relevant circumstances, the Court was not convinced that the defendant had established a *prima facie* case of discriminatory striking given the very limited proffer of evidence submitted: that the jurors for which the motion was made were of the same race as the defendant, the Government had used four of the eight strikes it was allotted to remove four of an unknown number of African-Americans available for jury service, and it was Mr. Knight's opinion that there were no obvious race-neutral reasons contained within the

answers on their questionnaires for the Government to have opted to remove these four African-Americans from the jury.   After analyzing this information, it was clear to the Court, for those reasons of record, that defendant had failed establish a *prima facie* case of purposeful discrimination.

## CONCLUSION

Upon completion of the jury selection process in this action, a jury of twelve and two alternates was empaneled to serve in this case, scheduled to begin **August 10, 2005.** No reason has been given, nor is one known, as to why this action should not proceed to trial as scheduled.

**DONE** this the 3rd day of August, 2005.

                **s/WILLIAM E. CASSADY**
                **UNITED STATES MAGISTRATE JUDGE**